IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SUMMER GORMAN**                                                                               **PLAINTIFF**

**VERSUS**                                CIVIL ACTION NO. 3:16CV204-GHD-JMV

**STATE OF MISSISSIPPI;**
**MISSISSIPPI GAMING COMMISSION;**
**TUNICA COUNTY;**
**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**ROBERT SHARP and JOHN**
**DOES 1-10, in individual capacity**                          **DEFENDANTS**

## COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW Summer Gorman (spouse of John Gorman-deceased and also on his behalf), hereinafter "Plaintiff", by and through its attorneys, and bring this action against the State of Mississippi, Mississippi Gaming Commission, Tunica County, the Mississippi Department of Public Safety, Robert Sharp, and John Does 1-10 who are officers, personnel, and supervisory officials of the Mississippi Gaming Commission, Tunica County; or Mississippi Department of Public Safety whose identity can be known only after discovery is conducted. This is an action to recover actual and punitive damages for the use of excessive force, unreasonable seizure of a person, the failure to protect a law enforcement officer in a controlled training session, and reckless indifference to medical needs in violation of the Fourth and Fourteenth Amendments of the United States Constitution. The actions of the Defendants constitute violations 42 U.S.C. Section 1983, particularly the Second, Fourth and the Fourteenth Amendment of the United States Constitution.

## INTRODUCTION

1.      At all relevant times, all Defendants acted under color of state law. This action is authorized by Title 42 U.S.C.A. § 1983.

## JURSIDICTION AND VENUE

2.      The Court has civil rights jurisdiction under Title 28 U.S.C.A. § 1343 and Title 42 U.S.C.A. §1331 for violation of the Fourth Amendment to the United States Constitution. The Court has supplemental jurisdiction over Plaintiff's state law claim for assault & battery, negligence, and wrongful death.

## PARTIES

3.      Plaintiff, Summer Gorman, was the spouse of John Gorman and is also the executor of John Gorman's estate. Summer Gorman is an adult citizen who resides at 122 Camden Shores, Madison, Mississippi 39110. John Gorman, deceased, was an adult resident citizen of who resided with Summer Gorman and their children at 115 Hartfield Drive, Madison, Mississippi 39042 at the time of his death. John Gorman was a twenty-year, decorated Special Agent with the Mississippi Gaming Commission, who had recently been promoted to Director of Investigations. John Gorman was 46 years old at the time of his death.

4.      Defendants include the State of Mississippi, as well as the Mississippi Gaming Commission and Mississippi Department of Public Safety that are municipal entities, organized and existing under the laws of the State of Mississippi. Defendants, State of Mississippi, the Mississippi Gaming Commission, and the Mississippi Department of Public Safety, may be served with process through the Mississippi Attorney General's Office, Jackson, MS.

5.      Tunica County may be served with process served upon the Mississippi Attorney General's Office or its designated legal representative. Defendant Tunica County is charged with the duty to supervise, manage, and control its emergency responders and to prevent the violation of the civil rights of its citizens.

6. Robert Sharp is an adult citizen whose residence is unknown. Robert Sharp is a former Special Agent from the Mississippi Gaming Commission, and is being sued in his individual and official capacity. Robert Sharp may be served through the Mississippi Attorney General's Office or a designated legal representative.

7. Defendants John Does 1-10 are individuals, officers, and managers of the Mississippi Gaming Commission, Mississippi Department of Public Safety, or Tunica County Sheriffs Office and/or entities whose identities are presently unknown to Plaintiffs, but who are believed to have been acting under color of state law at times relevant to this action, and whose actions and/or inactions were in violation of Plaintiff's rights and whose actions or inactions resulted in injuries and damages to Plaintiff as alleged herein. These Defendants will be served with process at a later time after discovery to determine their identity.

## FACTS

8. The Mississippi Gaming Commission (MGC) operates under the "Gaming Control Act", Mississippi Code of 1972, Title 75, Chapter 76, and maintains offices in throughout the state to include Jackson, Tunica, and Biloxi.

9. The mission of the MGC, a state controlled agency and entity, is to enforce the Gaming Control Act and Charitable Gaming Laws of the State of Mississippi. The MGC establishes and enforces regulations under the authority of those laws in such a manner that will ensure the integrity of the State of Mississippi and maintain the public confidence in both the charitable gaming and casino gaming industries by working in conjunction with the industry. The MGC works in concert with international, national, state, county, local regulatory and law enforcement agencies to establish a *safe* and crime free environment.

10. John Gorman was a Special Agent with the Mississippi Gaming Commission, and had recently been promoted to Director of Investigations. John Gorman, through his employment, maintained a special relationship with the Mississippi Gaming Commission and the State of Mississippi, as he was designated a "Special

Agent" and was promoted to Director of Investigations. John Gorman was a State of Mississippi law enforcement officer.

11.     John Gorman, while serving as a Special Agent with MGC, was married to Summer Gorman and had two children. John Gorman was in otherwise good health and fit for duty, and a highly respected law enforcement officer.

12.     The MGC provides training to its personnel, especially its Special Agents. As a part of the many types of training provided and required, the MGC conducts firearms training for its Special Agents on at least a quarterly basis. This required training is mandated by the State of Mississippi and the MGC.

13.     On November 3, 2014 Robert Sharp, Firearms Instructor for the MGC, and R.R. "Sonny" Dyer, Chief Firearms Instructor of the MGC scheduled two days of firearms training for January 20-21, 2015 at the Tunica County Firing and Qualification Range for Certified Law Enforcement Agents in Tunica County, Mississippi. Robert Sharp was assigned to be the lead firearms instructor and was in charge for this scheduled training.

14.     John Gorman was informed by the MGC of mandatory firearms training scheduled for Special Agents for January 20-21, 2015, and was required to attend this firearms training. John Gorman traveled from his home office to attend this training.

15.     On January 20, 2015, the MGC held firearms training at the Tunica County Firing and Qualification Range for Certified Law Enforcement Agents. The topics included a Safety Briefing by Firearms Instructors; Shooting, Movement and Scan; Threat, Shooting and Movement; Accuracy Exercise; Low Light Shooting and Proper Use of Flashlight; and, Low Light Practice and Qualification. There were no known incidents reported that day.

16.     For unknown reasons, some of the MGC Special Agents did not receive the completed and required training scheduled for January 20, 2015.

17. On January 21, 2015 Robert Sharp, the MGC Firearms instructor, decided to "catch up" those agents who missed the previous day's training, however, decided to bend the training rules and conduct the firearms training at the "office" of the MGC instead of at the appropriate firearms range...the Tunica County Firing and Qualification Range for Certified Law Enforcement Agents, where training was conducted the day prior. This MGC office is located inside an office building at 3468 Casino Way, Suite C, Robinsonville, MS along with other businesses and civilians.

18. On January 21, 2015, Robert Sharp, MGC Firearms Instructor, briefed three MGC special agents on the Firearms training to be received in the MGC office. Allegedly, a "safety briefing" was also given by MGC Firearms Instructor Robert Sharp to the trainees/Special Agents to remove all real firearms. The trainees/Special Agents then removed their real firearms and replaced them with "dummy" firearms or "red-handles".

19. Robert Sharp, the MGC Firearms Instructor and leader of the training, did NOT remove his loaded real firearm after everyone else involved did. Robert Sharp initiated, held, and participated in a training exercise requiring that firearms be drawn from holsters and fired at role-players, however kept his real firearm in his holster. MGC Firearms Instructor Robert Sharp asked John Gorman to role-play as one of the aggressors or attackers to the trainees/Special Agents. The training exercise started and required the use of "dummy" guns or "red handles" as the training required participants to draw a pretend firearm (a dummy gun or red handle) from their holster and fire at their aggressor.

20. Early in this training exercise, Robert Sharp, the MGC Firearms Instructor, became agitated with how one of the trainees/Special Agents was responding to the role-playing, and stepped in to show the trainee/Special Agent how it should properly be performed. Robert Sharp then pulled his REAL firearm and shot John Gorman in the chest.

21. Emergency personnel under the direction of Tunica County were called to the shooting scene. The Tunica County Sheriff's Department took control of the

scene immediately following the shooting. A medical helicopter and ambulance arrived on the scene along with sheriff deputy automobiles. Despite hospitals and a trauma center (The Med in Memphis) being located in "very" close proximity, a command decision was made to NOT transport John Gorman to a hospital or trauma center. John Gorman remained on the ground for approximately "one hour" before he died from his wounds.

22. The Mississippi Department of Public Safety, by and through the Mississippi Bureau of Investigation (MBI), was tasked with conducting the subsequent investigation of the shooting of a state law enforcement officer. MBI Captain Peter Clinton was the commanding Special Agent and his standard operating procedures and protocol required the assignment of a MBI Special Agent under his command to conduct this investigation.

23. MBI Captain Peter Clinton decided that he should be the lead investigator and conduct this investigation.

24. MBI Captain Peter Clinton did not perform a standard and objective investigation as required by the MBI. Limited interviews were conducted. No toxicology test was ever taken from the shooter, Robert Sharp, as is required in any shooting or homicide investigation. All leads were not pursued.

25. Instead of a purely factual report, MBI Captain Peter Clinton then provided a "slanted" and "opinionated" report to the prosecutor and grand jury that resulted in a "no bill" or no criminal charge against Robert Sharp.

26. Subsequently and shortly after this investigation, MBI Captain Peter Clinton was removed from MBI employment.

27. The Defendants' actions and inactions violated John Gorman's right to be free from state-occasioned damage to his bodily integrity and justice which are protected by the Fourth and Fourteenth Amendment's guarantees of due process and equal protection.

## CAUSES OF ACTION

### UNREASONABLE SEIZURE AND USE OF EXCESSIVE FORCE AGAINST JOHN GORMAN

28.     Plaintiff re-alleges the allegations of Paragraphs 1-27 of this Complaint as if fully set forth herein.

29.     If law enforcement officers use excessive force, the Fourth Amendment guarantee against unreasonable seizure is implicated. At all times during this MGC training exercise, Defendants Robert Sharp and the Mississippi Gaming Commission had a duty under the Fourth Amendment of the U.S. Constitution to refrain from the use of excessive force.

30.     John Gorman suffered from a gunshot wound to the chest by a fellow agent and firearms instructor of the Mississippi Gaming Commission. A real gun was used by the lead firearms instructor in a non-gun training exercise that was held in an office instead of at a required firearms range. The firearms instructor ignored significant safety protocols, and thus created a "special danger" to not only John Gorman, but also all trainees and the civilians working next door. A gunshot from a live weapon introduced into a non-gun training exercise scenario is clearly an unreasonable seizure and excessive force to John Gorman.

31.     Defendant State of Mississippi, Mississippi Gaming Commission, and John Does failed to adequately train Defendant Robert Sharp in proper firearms training procedures and as a "firearms instructor' so as to insure that Defendant Robert Sharp did not violate the rights of a citizen to be free from unreasonable seizure and excessive use of force. Even the thought of having firearms training at an office, instead of at a firearms range, and then the use of a real gun against live trainees clearly shows inadequate training to a lead firearms instructor.

32.     Defendants State of Mississippi, Mississippi Gaming Commission, and John Does failed to adequately supervise Defendant Robert Sharp or employ proper

training procedures to be a "firearms instructor" in order to insure that Defendant Robert Sharp did not violate the rights of a citizen by using excessive force and violating its duty of care. There was clearly no oversight to the lead firearms instructor's actions even though other firearms instructors were present. This clearly shows the training at the office, and with a live firearm, was either an acceptable and dangerous practice, or there was no supervision and inadequate training to the lead firearms instructor.

33.     As a direct and proximate result of one or more of the said wrongful acts or omissions to act of Defendants, Plaintiff's husband, John Gorman, suffered a gunshot wound to the chest and a severe injury to his person, pain, suffering, and other injuries and damages, and ultimate death, which shall be proven at trial.

### VIOLATION OF FOURTH AMENDMENT-RECKLESS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS

34.     Plaintiff re-alleges the allegations of Paragraphs 1-33 of this Complaint as if fully set forth herein.

35.     Defendants Tunica County and John Does failed to assure that John Gorman received appropriate medical treatment after John Gorman was shot in the chest. This was in further violation of Plaintiff's rights under the Fourth Amendment to the U.S. Constitution to be free from reckless indifference to his serious medical needs.

36.     Defendants Tunica County and John Does failed to provide appropriate medical treatment or transport to John Gorman to a nearby hospital or trauma center, thus violating the rights of the Plaintiff to be free from reckless indifference to serious medical needs.

37.     Defendants Tunica County and John Does failed to adequately supervise emergency responders in order to insure that they did not violate the rights of a citizen and to insure that citizens wounded from a gunshot received adequate medical attention when needed.

38.    As a direct and proximate result of one or more of the said wrongful acts or omissions to act by Defendants, John Gorman suffered severe and permanent injury to his person as well as pain, suffering, disability, mental anguish, humiliation, other injuries and ultimate death.

## VIOLATIONS OF GUARANTEE OF DUE PROCESS

39.    *Plaintiff re-alleges the allegations of Paragraphs 1-38 of this Complaint as if forth herein.*

40.    The right to be free from state-occasioned damage to a person's body is protected by the Fourteenth Amendment's due process guarantees.

41.    The Second Amendment guarantees an individual right to possess a firearm unconnected with the service in the militia, and to use that arm for traditional lawful purposes, such as self-defense. The Second Amendment was incorporated against the state and local governments through the Due Process Clause of the Fourteenth Amendment. It is through due process that the state must provide a substantive substitute to the right of self-protection when denying or restricting this individual right by assuming a duty to protect.

42.    John Gorman was denied and restricted his right of self-protection when he was required to remove his firearm for training, and the State of Mississippi by and through the Mississippi Gaming Commission assumed a duty to protect John Gorman.

43.    The Due Process Clause is violated when the State of Mississippi and the MGC removed John Gorman's right to self-defense and did not provide an equal substitute. When the State of Mississippi and the MGC issued a "no firearms policy" for this particular training scenario, and in order for John Gorman to participate, he had to hand over his right of self-defense to the State of Mississippi and the MGC. The State of Mississippi and the MGC then became responsible for providing the rights by other means, and thus has created a "duty to protect" by restricting John Gorman's right to self-protection.

44.     Additionally, a state-created duty to protect exists when only **two of the four** conditions are met:

> i) a relationship must exist between the state and the individual
> ii) the state must create an opportunity for harm that would otherwise not exist
> iii) the state acted with willful disregard for the individual's safety
> iv) the state ultimately caused the harm to the individual, and it was foreseeable

45.     John Gorman was a Special Agent for the State of Mississippi and the MGC. He enjoyed a "special relationship" with the State of Mississippi and the MGC as he was titled "special agent". Also, by restricting or prohibiting a fundamental constitutionally protected right and forcing John Gorman to remove his weapon, the State of Mississippi and the MGC created this relationship by assuming responsibility for providing an equal replacement for his self-protection.

46.     The State of Mississippi and the MGC created an opportunity for harm when it forced and prevented a lawfully armed individual, John Gorman, from protecting himself. Additionally, the introduction of a live firearm into a no-firearm training scenario created a "special danger". The opportunity for harm was state created, and the required training resulted in a live firearm being used against John Gorman.

47.     The State of Mississippi and the MGC provided Robert Sharp with the distinction of being a firearms instructor, and the firearms instructor "in-charge" of this training exercise. The state acted with willful disregard by allowing Robert Sharp to be a firearms instructor, by Robert Sharp not appropriately using the firearms range, and by Robert Sharp allowing a real gun to be used in a non-real gun training exercise.

48.     The State of Mississippi and the MGC are ultimately responsible for the death of John Gorman, and it was foreseeable. The State of Mississippi and the MGC placed Robert Sharp in the firearms instructor position for this training, and was aware this type of firearms training should be performed on a certified firearms range. However, on this occasion and others, it was not and rules and regulations were

ignored. The State of Mississippi and the MGC entrusted its authority to Robert Sharp, who clearly abused training protocol, rules and regulations, and used a live firearm in a non-live firearms training scenario.

49.     In order to establish a state created danger or "special danger", recklessness and deliberate indifference also need to be present. The State and the MGC, with Robert Sharp as its firearms instructor, were clearly reckless when it required a training scenario calling for no real firearms, yet Robert Sharp, the state's designated firearms instructor in charge was allowed to carry his real firearm into the training. Robert Sharp also acted recklessly when he decided to conduct firearms training in an office environment instead of at the appropriate and expected firearms range. Robert Sharp not only endangered the lives of the MGC Special Agent trainees, but also the surrounding civilians in that strip office. Robert *Sharp's recklessness and indifference is exhibited by not utilizing a state sanctioned* firearms range and by introducing a real firearm into a non-firearm training scenario.

50.     The State and MGC exercised deliberate indifference to the safety of all MGC Special Agent trainees and civilians located next door when it, through its designated firearms instructor, held firearms training in a public office building instead of on a designated firearms range.

51.     The State and MGC exercised deliberate indifference to the safety of the MGC Special Agent trainees and surrounding civilians when it, through its appointed firearms instructor, allowed the introduction of a live firearm into a non-live firearm shooting exercise.

52.     Deliberate indifference is defined as not just any negligence action and maybe not quite gross negligence, but somewhere in between. The MBI investigative report following the death of John Gorman stated the State of Mississippi and MGC appointed firearms instructor, Robert Sharp, was "Extremely Negligent" in his actions.

53. The Mississippi Department of Public Safety, by and through MBI Captain Peter Clinton, also possesses a duty to adequately and accurately protect the citizens of the State of Mississippi and to ensure this outrageous action never happens again.

54. Peter Clinton was a Special Agent with the MBI and enjoyed the special relationship State of Mississippi and was tasked with the duty to protect by conducting an appropriate investigation following a homicide.

55. The Mississippi Department of Public Safety, by and through MBI Captain Peter Clinton created an opportunity for harm that otherwise would not have existed when Peter Clinton did not adequately and accurately investigate the shooting of John Gorman, and then provided an opinionated/slanted investigative report, instead of a factual report, as is required by the MBI.

56. The State of Mississippi and the Mississippi Department of Public Safety ultimately caused harm to John Gorman, John Gorman's family, and the integrity of the MBI when MBI Peter Clinton failed to adequately and accurately investigate or report the causes leading to the death of John Gorman.

57. Lastly, the State of Mississippi, the Mississippi Department of Public Safety, the MGC, and the individual and official actions of MGC Robert Sharp were so outrageous as to shock the conscience. By conducting firearms training at a public office site with civilians next door, and not on a certified firearms range, and also by allowing a live firearm to be introduced into a no-firearm training scenario clearly shocks the conscience of all law enforcement officers and the civilian public. These actions, which resulted in the death of John Gorman, are so outrageous and egregious, that it can fairly be said to shock the temporary conscience of any human being. Additionally, the failure of MBI Captain Peter Clinton to follow MBI protocol, *rules, and regulations and protect the dignity of John Gorman, a fallen law enforcement officer, and his family* additionally shock the temporary conscience of any human being.

## MONETARY CLAIM AGAINST DEFENDANTS

58.     Plaintiff re-alleges the allegations of Paragraphs 1-57 of this Complaint as if fully set forth herein.

59.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendants, the Plaintiff was injured as her husband sustained violations of rights under the Second, Fourth and Fourteenth Amendments to the U.S. Constitution; as well as, severe seizure and injury to his person, pain, suffering, disability, mental anguish, humiliation, other injuries, and ultimate death.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY **PRAYS** and requests actual and punitive damages in an amount to be determined by a jury and for reasonable attorney fees.

This the 9th day of September, 2016.

Respectfully submitted,

SUMMER GORMAN
Plaintiff

By: _____
Philip H. Neilson, MSB 3798
Attorney for Plaintiff

Neilson Law Office
P.O. Box 1860
Oxford, MS 38655
662-832-8070
attorneyhalneilson@gmail.com