IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SUMMER GORMAN                                                    PLAINTIFF

v.                                         CIVIL ACTION NO. 3:16-cv-00204-GHD-JMV

STATE OF MISSISSIPPI, MISSISSIPPI
GAMING COMMISSION, TUNICA COUNTY,
MISSISSIPPI DEPARTMENT OF PUBLIC
SAFETY, and ROBERT SHARP                                          DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court are the following: **(1)** a motion to dismiss [8] filed by

Defendants State of Mississippi, Mississippi Gaming Commission, Mississippi Department of

Public Safety, and Robert Sharp in his official capacity (the "State Defendants"); and **(2)** a

motion for judgment on the pleadings [17] filed by Defendant Robert Sharp ("Defendant Sharp")

in his individual capacity.  Upon due consideration, the Court finds that the State Defendants'

motion to dismiss [8] should be granted, and Defendant Sharp's motion for judgment on the

pleadings [17] should be granted in part and denied in part.

### I.    *Factual and Procedural Background*

On September 9, 2016, Plaintiff Summer Gorman ("Plaintiff") filed a complaint [1]

against Defendants the State of Mississippi, the Mississippi Gaming Commission, Tunica

County, the Mississippi Department of Public Safety, and Sharp (collectively, "Defendants") in

connection with the death of Plaintiff's husband, the Decedent John Gorman (the "Decedent"),

who was tragically shot and killed during a firearms training exercise.  Plaintiff asserts the

following causes of action pursuant to 42 U.S.C. § 1983: **(a)** unreasonable seizure and excessive

force pursuant to the Fourth Amendment and Fourteenth Amendment against Defendants

1

Mississippi Gaming Commission and Sharp in his official and individual capacity;[1] **(b)** reckless indifference to the Decedent's serious medical needs pursuant to the Fourth Amendment and Fourteenth Amendment against Defendant Tunica County;[2] **(c)** violation of due process on a state-created danger theory pursuant to the Second Amendment and Fourteenth Amendment against Defendants Mississippi Gaming Commission, Mississippi Department of Public Safety, and Sharp in his official and individual capacity;[3] and **(d)** possibly, failure to train/supervise pursuant to the Fourteenth Amendment against the Mississippi Gaming Commission.[4] Plaintiff's complaint further provides that she urges the following state law claims against Defendants, though there are no specific allegations pled in the complaint as such: **(a)** assault and battery, **(b)** negligence, and **(c)** wrongful death.[5] Plaintiff seeks actual and punitive damages and reasonable attorney's fees.

The Mississippi Gaming Commission is a state agency and entity that operates under the Gaming Control Act, Mississippi Code § 75-76-1 to -313, and maintains offices throughout the State of Mississippi including Jackson, Tunica, and Biloxi.[6] The Decedent was a special agent and firearms instructor with the Mississippi Gaming Commission who was promoted to Director of Investigations;[7] the Decedent was married to Plaintiff and had two children.[8] Defendant

---

[1] Pl.'s Compl. [1] at 1, ¶¶ 28–33.

[2] *Id.* at 1, ¶¶ 34–38.

[3] *Id.* ¶¶ 39–57.

[4] *Id.* ¶¶ 31–33.

[5] *Id.* ¶ 2.

[6] *Id.* ¶¶ 8, 9; Def. Sharp's Answer [10] ¶¶ 8, 9.

[7] Pl.'s Compl. [1] ¶¶ 3, 10, 30; Def. Sharp's Answer [10] ¶¶ 3, 10, 30.

[8] Pl.'s Compl. [1] ¶ 11.

Sharp is a former special agent and firearms instructor with the Mississippi Gaming Commission.[9]

The Mississippi Gaming Commission provides training to its personnel,[10] including firearms training, which Plaintiff alleges is mandatory by the State of Mississippi and the Mississippi Gaming Commission for special agents and occurs at least on a quarterly basis.[11] Plaintiff alleges that Defendant Sharp, firearms instructor of the Mississippi Gaming Commission, and R.R. "Sonny" Dyer, chief firearms inspector of the Mississippi Gaming Commission, scheduled a two-day training session on January 20–21, 2015 at the Tunica County Firing and Qualification Range for Certified Law Enforcement Agents; Plaintiff further alleges that Defendant Sharp was assigned to be the lead firearms instructor in charge of the training.[12] Plaintiff maintains that the Mississippi Gaming Commission informed the Decedent that he was required to attend the training.[13]

On January 20, 2015, firearms training was conducted at the Tunica County Firing and Qualification Range for Certified Law Enforcement Agents; no known incidents were reported that day.[14] However, Plaintiff alleges that Defendant Sharp made the decision to conduct the firearms training on January 21, 2015 at another site not designated as a firearms range.[15]

---

[9] *Id.* ¶¶ 6, 30; Def. Sharp's Answer [10] ¶¶ 6, 30.

[10] Pl.'s Compl. [1] ¶ 12; Def. Sharp's Answer [10] ¶ 12.

[11] Pl.'s Compl. [1] ¶ 12.

[12] *Id.* ¶ 13.

[13] *Id.* ¶ 14.

[14] *Id.* ¶ 15.

[15] *See id.* ¶ 17 (alleging that the firearms training on January 21, 2015 was conducted at the " 'office' of the M[ississippi] G[aming] C[omission]," which "is located inside an office building . . . [in] Robinsonville, M[ississippi,] along with other businesses and civilians."). *But see* Pl.'s Resp. to Def. Sharp's Mot. J. Pleadings [25]

3

The training exercise required that the trainees draw "dummy" guns, not actual firearms, from their holsters and pretend to fire the dummy guns at role-playing aggressors.[16] However, Plaintiff alleges that Defendant Sharp "did NOT remove his loaded real firearm after everyone else involved did," that is, "[Defendant] Sharp participated in a training exercise requiring that firearms be drawn from holsters and fired at role-players, however kept his real firearm in his holster."[17] During this training, the Decedent, whom Defendants maintain was also a firearms instructor during the training, acted as an aggressor to the trainees.[18] Plaintiff alleges that Defendant Sharp "became agitated" with how one of the trainees/special agents was responding to the role-playing.[19] In demonstrating to the trainee/special agent how to properly perform the exercise, Defendant Sharp pulled his real firearm and shot the Decedent in the chest.[20] Emergency personnel were called to the shooting scene.[21] Plaintiff alleges that the emergency personnel were under the direction of Defendant Tunica County and that "[d]espite hospitals and a trauma center (The Med in Memphis) being located in 'very' close proximity, a command decision was made to NOT transport [the Decedent] to a hospital or trauma center."[22] The

---

at 1 (maintaining that Defendant Sharp "shot and killed [the Decedent] in the parking lot of a strip mall in Tunica, Mississippi").

[16] Pl.'s Compl. [1] ¶ 19; Def. Sharp's Answer [10] ¶ 19.

[17] Pl.'s Compl. [1] ¶ 19 (emphasis in original); Def. Sharp's Answer [10] ¶ 19.

[18] Pl.'s Compl. [1] ¶ 19; Def. Sharp's Answer [10] ¶ 19.

[19] Pl.'s Compl. [1] ¶ 20.

[20] *Id.*; Def. Sharp's Answer [10] ¶ 20.

[21] Pl.'s Compl. [1] ¶ 21; Def. Sharp's Answer [10] ¶ 21.

[22] Pl.'s Compl. [1] ¶ 21 (emphasis in original).

Decedent died shortly thereafter from the gunshot wound he sustained during the firearms training exercise.[23]

The Mississippi Bureau of Investigation was tasked with conducting an investigation of the shooting; Captain Peter Clinton was the investigator who conducted the investigation and prepared the investigative report.[24] Plaintiff alleges that Mr. Clinton's report was "slanted" and "opinionated," "[i]nstead of a purely factual report," and stated that Defendant Sharp "was '[e]xtremely [n]egligent' in his actions."[25] Plaintiff further alleges that Mr. Clinton's report was presented to the prosecutor and Grand Jury; the Grand Jury returned a no bill.[26] Plaintiff avers that shortly thereafter Mr. Clinton was "removed from M[ississippi] B[ureau of] I[nvestigation] employment."[27]

On November 7, 2016, the State Defendants filed the present motion to dismiss [8] pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff subsequently filed a response, and the State Defendants filed a reply.

Defendant Sharp then filed his answer [10] to the complaint. Subsequently, on December 12, 2016, Defendant Sharp filed the present motion for judgment on the pleadings [17] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure concerning the individual-capacity claims asserted against him. Plaintiff filed a response to the motion, and Defendant Sharp filed a reply.

On December 24, 2016, Plaintiff filed a motion for limited discovery [19] and to stay any ruling on Defendant Sharp's motion for judgment on the pleadings pertaining to qualified

---

[23] *Id.*; State Defs.' Mot. Dismiss [8] ¶ 1.

[24] Pl.'s Compl. [1] ¶¶ 22, 23; Def. Sharp's Answer [10] ¶¶ 22, 23.

[25] Pl.'s Compl. [1] ¶¶ 25, 52.

[26] *Id.* ¶ 25.

[27] *Id.* ¶ 26.

5

immunity. Defendant Sharp filed a response, and Plaintiff filed a reply. The Court denied that motion in an Order [22] dated February 6, 2017, finding that no further factual development appeared necessary to determine the qualified immunity issue at the Rule 12(c) stage.

With the foregoing factual and procedural background in mind, the Court turns to the issues before it.

## II. *Analysis and Discussion*

As stated above, two dispositive motions are before the Court: the State Defendants' motion to dismiss [8] all official-capacity claims pursuant to Rule 12(b)(1) and 12(b)(6), and Defendant Sharp's motion for judgment on the pleadings [17] on the individual-capacity claims against Defendant Sharp pursuant to Rule 12(c). The Court examines each motion in turn.

### A. Motion to Dismiss – Federal Rule of Civil Procedure 12(b)(1) & (6)

The Court first examines the State Defendants' motion to dismiss all official-capacity claims due to Eleventh Amendment immunity pursuant to Rule 12(b)(1), and due to the State Defendants not being persons for Section 1983 purposes pursuant to Rule 12(b)(6).

"When a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, . . . courts must consider the jurisdictional challenge first." *McCasland v. City of Castroville, Tex.*, 478 F. App'x 860, 860 (5th Cir. 2012) (per curiam) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)). This " 'prevents a court without jurisdiction from prematurely dismissing a case with prejudice.' " *Id.* at 860–61 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)); *accord Hitt v. City of Pasadena, Tex.*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

## 1. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion allows a party to challenge the Court's subject matter jurisdiction. " '[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.' " *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit. Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted)).

The Fifth Circuit has instructed:

> A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. Thus, under Rule 12(b)(1), the district court can resolve disputed issues of fact to the extent necessary to determine jurisdiction[.]

*Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quotation marks and citation omitted). In ruling on a Rule 12(b)(1) motion to dismiss, the Court can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(1), the State Defendants argue that the Eleventh Amendment bars suit on all claims against the State Defendants. However, Plaintiff argues in response that the Court should defer ruling on the motion to dismiss until discovery is conducted.

The law is well established that discovery is not necessary prior to a ruling on Eleventh Amendment immunity, as "[t]he Eleventh Amendment provides not merely a defense to liability but an absolute immunity from suit." *Fontenot v. Texas*, 44 F.3d 1004, 1994 WL 733504, at *3

n.3 (5th Cir. 1994) (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506

U.S. 139, 145–46, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993)). Therefore, the Court finds it

appropriate and necessary to address and rule on the Eleventh Amendment issue prior to

discovery.

"The Eleventh Amendment strips courts of jurisdiction over claims against a state that

has not consented to suit." *Pierce v. Hearn Indep. Sch. Dist.*, 600 F. App'x 194, 197 (5th Cir.

2015) (per curiam) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01,

104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). Sovereign immunity is a broad jurisdictional doctrine

prohibiting suit against the government absent the government's consent. Sovereign immunity

was assumed at common law, brought from England to the colonies, and existed prior to the

ratification of the United States Constitution. Although the term "sovereign immunity" nowhere

appears in the Constitution, the concept was perhaps woven into the very fabric of the document.

Andrew Hamilton explained:

> It is inherent in the nature of sovereignty not to be amenable to the
> suit of an individual without its consent. This is the general sense,
> and the general practice of mankind; and the exemption, as one of
> the attributes of sovereignty, is now enjoyed by the government of
> every State in the Union.

THE FEDERALIST NO. 81, at 511 (Alexander Hamilton) (Wright ed., 1961). At the Virginia

ratifying convention, James Madison stated: "Jurisdiction in controversies between a state and

citizens of another state is much objected to, and perhaps without reason. It is not in the power

of any individuals to call any state into court." 3 DEBATES ON THE FEDERAL CONSTITUTION 533

(J. Elliot 2d ed., 1854). At that same convention, John Marshall stated: "With respect to disputes

between a state and the citizens of another state, its jurisdiction has been decried with unusual

vehemence. I hope no gentleman will think that a state will be called at the bar of the federal court." 3 *id.*, at 555.

Despite the long-standing principle of sovereign immunity, in 1793, the United States Supreme Court held that a state could be sued by a citizen of another state or a foreign country. *See Chisolm v. Georgia*, 2 Dall. 419, 1 L. Ed. 440 (1793). But five years later, the states ratified the Eleventh Amendment, which provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; *SEE* C. JACOBS, THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY 64–75 (1972). The Fifth Circuit has stated: "Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (internal citations omitted). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (citation omitted). Indeed, "[t]he amendment has been judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect." *See Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir.), *cert. denied*, 432 U.S. 910, 97 S. Ct. 2959, 53 L. Ed. 2d 1083 (1977) (citations omitted). Both federal and pendent state law claims are barred from being asserted against a state in federal court. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 119–21, 104 S. Ct. 900.

State immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "This

immunity also extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. Feb. 6, 2001); *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)); *Pennhurst*, 465 U.S. at 117, 104 S. Ct. 900.

Based on the foregoing, in the case *sub judice*, the claims against the State of Mississippi are barred by Eleventh Amendment immunity. Furthermore, as this Court has held previously and as the State Defendants in the case *sub judice* correctly argue, the Mississippi Department of Public Safety is an arm of the State of Mississippi. *See Hawn v. Hughes*, No. 1:13-CV-00036-GHD, 2014 WL 4418050, at *1 (N.D. Miss. Sept. 8, 2014). *See also Delaney v. Miss. Dep't of Pub. Safety*, No. 3:12cv229, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013), *aff'd*, 554 F. App'x 479 (5th Cir. 2014) (per curiam); *Johnson v. Miss. Dep't of Pub. Safety*, No. 1:14CV062-SA-DAS, 2015 WL 5313563, at *2 (N.D. Miss. Sept. 11, 2015); *Meaux v. Mississippi*, No. 1:14CV323-KS-RHW, 2015 WL 3549579, at *3 (S.D. Miss. June 8, 2015). Also, as correctly argued by the State Defendants and supported by case law, the Mississippi Gaming Commission is an arm of the State of Mississippi. *See Moore v. Miss. Gaming Comm'n*, No. 1:15-CV-13-DMB-DAS, 2016 WL 5477673, at *5–*9 (N.D. Miss. Sept. 29, 2016); *see also Miss. Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163, 165 (Miss. 2001) (discussing creation of the Mississippi Gaming Commission as a state agency and its purpose). Finally, as correctly argued by the State Defendants, the claims against Defendant Sharp in his official capacity are similarly barred as claims against the State of Mississippi itself. *See Fox v. Mississippi*, 551 F. App'x 772, 774–75 (5th Cir. 2014) (per curiam) (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted)).

There are three possible exceptions to Eleventh Amendment immunity: (i) valid abrogation by Congress; (ii) waiver or consent to suit by the state; or (iii) the state's amenability to suit under the *Ex parte Young* doctrine. The Court examines each possible exception below.

### (i) Abrogation

Abrogation, which is the first exception to Eleventh Amendment immunity, applies only if Congress has unequivocally expressed its intent to abrogate a state's sovereign immunity via Section 5 of the Fourteenth Amendment. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 366 (5th Cir. 2012) (per curiam) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001)). Congress has not abrogated Section 1983 claims. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979). Furthermore, Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a). *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005). Accordingly, abrogation does not apply as an exception to Eleventh Amendment immunity on any of Plaintiff's claims against the State Defendants in the case *sub judice*—a point that Plaintiff concedes in her response to the motion to dismiss. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to State Defs.' Mot. Dismiss [15] at 11.

### (ii) Waiver/Consent to Suit

The second exception to Eleventh Amendment immunity provides that sovereign immunity from suit is waivable, but such waiver must be clearly stated and will not be easily implied. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Jagnandan*, 538 F.2d at 1117 (citing *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 1361, 39 L. Ed. 2d 662 (1974); *Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276,

79 S. Ct. 785, 3 L. Ed. 2d 804 (1959)). The Court will now examine waiver in the context of the Section 1983 claims and any state law claims against the State Defendants.[28]

As accurately recognized by Plaintiff, the Mississippi Tort Claims Act ("MTCA") provides the exclusive remedy against a governmental entity or its employee. *See* MISS. CODE ANN. § 11-46-7(1). Thus, "[a]ny claim filed against a governmental entity and its employees (for monetary relief) must be brought under [the] statutory scheme" of the MTCA. *Stuckey v. Miss. Dep't of Trans.*, No. 3:07-cv-639-TSL-JCS, 2008 WL 1868421, at *2 (S.D. Miss. Apr. 24, 2008); *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999). However, "Mississippi expressly preserved its sovereign immunity to suit in federal court when it enacted the [MTCA]." *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (per curiam) (citing MISS. CODE ANN. § 11-46-5(4), which provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *accord Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006) ("The MTCA also preserves all immunities granted by the Eleventh Amendment of the United States Constitution."). Because the Eleventh Amendment bars both the Section 1983 claims and state law claims against the State Defendants and because Mississippi has not waived its sovereign immunity as to such claims, waiver does not apply as an exception to Eleventh Amendment immunity.

For all of the foregoing reasons, Plaintiff's Section 1983 claims and any purported state law claims are barred by sovereign immunity and not subject to waiver.

(iii)     ***Ex parte Young Doctrine***

---

[28] However, the Court notes that Plaintiff has made no specific allegations supporting any state law claims in her complaint, nor has she otherwise made any arguments in support of sustaining any state law claims against Defendants.

The third and final exception to Eleventh Amendment immunity is a state's amenability to suit under the *Ex parte Young* doctrine. To overcome Eleventh Amendment immunity, the plaintiff must bring an action grounded in federal law for monetary relief that is "ancillary" to injunctive relief against named state officials. *Edelman*, 415 U.S. at 667–68, 94 S. Ct. 1347. *Ex parte Young* allows suit to be brought against a state officer in federal court for the purpose of enforcing the Supremacy Clause to the Constitution if the following criteria are met: (1) the plaintiff has pleaded his case against the state official responsible for enforcing the law at issue in that person's official capacity; (2) the plaintiff has alleged an ongoing violation of federal law; and (3) the plaintiff has requested the proper relief, that is, prospective, injunctive relief, or relief that is ancillary to prospective relief. *See Walker v. Livingston*, 381 F. App'x 477, 478 (5th Cir. 2010) (per curiam) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)). Based on the foregoing, Plaintiff's official-capacity claims against Defendants the State of Mississippi, the Mississippi Gaming Commission, and the Mississippi Department of Public Safety are not permitted under *Ex parte Young*, because those claims are not urged against a state official responsible for enforcing the law at issue in the person's official capacity. *See Walker*, 381 F. App'x at 478.

However, even the claims urged against Defendant Sharp in his official capacity are not permitted by *Ex parte Young*, because Plaintiff fails to allege an ongoing violation of federal law and fails to seek the proper relief. *See id.* Plaintiff's complaint outlines specific alleged actions taken by the State Defendants that allegedly caused the Decedent's death and Plaintiff's damages; these allegations do not support an ongoing violation of federal law. *See* Pl.'s Compl. [1] ¶ 33 ("As a direct or proximate result of one or more of the said wrongful acts or omissions to the act of Defendants, [the Decedent] suffered a gunshot wound to the chest and a severe injury

to his person, pain, suffering, and other injuries and damages, and ultimate death . . . ."); ¶ 38 ("As a direct and proximate result of one or more of the said wrongful acts or omissions to act by Defendants, [the Decedent] suffered severe and permanent injury to his person[,] as well as pain, suffering, disability, mental anguish, humiliation, other injuries[,] and ultimate death."); ¶ 59 ("As a direct and proximate result of the foregoing wrongful acts or omissions by Defendants, the Plaintiff was injured as [the Decedent] sustained violations of [constitutional rights,] as well as[] severe seizure and injury to his person, pain, suffering, disability, mental anguish, humiliation, other injuries, and ultimate death."). Even the most liberal reading of Plaintiff's complaint does not reveal any claim for prospective relief to end a continuing violation of federal law as is required under *Ex parte Young*. Further, Plaintiff's complaint requests "actual and punitive damages for the use of excessive force, unreasonable seizure of a person, the failure to protect a law enforcement officer in a controlled training session, and reckless indifference to medical needs in violation of the Fourth and Fourteenth Amendments of the United States Constitution." *Id.* at 1. The damages sought cannot be characterized as "prospective, injunctive relief, or relief that is ancillary to prospective relief," *see Walker*, 381 F. App'x at 478, but are instead sought to remedy alleged past wrongs. In Plaintiff's response, she does not address these fatal flaws in her complaint.

Furthermore, to the extent Plaintiff has alleged any state law claims against the State Defendants, such claims are not permitted by *Ex parte Young*, because state law claims do not implicate federal rights or federal supremacy concerns. *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. at 106, 104 S. Ct. 900; *Hafer*, 502 U.S. at 25, 112 S. Ct. 358). Accordingly, all claims against the State Defendants in their official capacities are barred by sovereign immunity.

Plaintiff makes a creative, fascinating legal argument that the Fourteenth Amendment allows her claims against the State Defendants despite the Eleventh Amendment bar. *See, e.g.*, Pl.'s Mem. Br. Supp. Resp. Opp'n to State Defs.' Mot. Dismiss [15] at 7, 11 (emphasis in original) ("The Fourteenth Amendment . . . was adopted AFTER the Eleventh Amendment, not before, and for an important reason . . . [to] protect the citizens of all of the states. . . . The framers of the Constitution adopted the Fourteenth Amendment to protect the citizens of the United States from the State for certain actions, after the Eleventh Amendment was well in place. The Plaintiff should be allowed to proceed against ALL responsible parties . . . ."); 10 ("[T]he Fourteenth Amendment itself is what has permanently abrogated state sovereign immunity. State sovereign immunity is simply nonexistent against the constitutional rights sought to be vindicated in a [Section] 1983 action."). However, as set forth above, well established law considering the interplay of the Eleventh Amendment and Fourteenth Amendment dictates that Plaintiff's official-capacity claims against the State Defendants cannot prevail. The Court now turns to the State Defendants' arguments in the motion to dismiss pertaining to Rule 12(b)(6).

## 2. Federal Rule of Civil Procedure 12(b)(6)

The State Defendants also argue that the Section 1983 claims must be dismissed pursuant to Rule 12(b)(6), because the State Defendants are not persons amenable to suit under Section 1983.

Motions to dismiss pursuant to Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–

17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint . . . 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ' " *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

As the State Defendants correctly argue, the State Defendants are not amenable to suit on the Section 1983 claims for the additional reason that they are not persons subject to suit under Section 1983. States (including arms of the state and state officers in their official capacities) are also immune from suit on Section 1983 claims under the Eleventh Amendment, because states are not "persons" subject to liability under Section 1983. *Arizonans for Official English*, 520

U.S. at 69 & 69 n.24, 117 S. Ct. 1055; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Accordingly, the Section 1983 claims against the State Defendants must also be dismissed on the ground that the State Defendants are not persons amenable to suit under Section 1983.

The Court now turns to Defendant Sharp's motion for judgment on the pleadings on the individual-capacity claims asserted against him.

### B. Motion for Judgment on the Pleadings—Federal Rule of Civil Procedure 12(c)

In Defendant Sharp's motion for judgment on the pleadings, he argues that he is entitled to qualified immunity on the individual-capacity claims against him, namely: **(a)** a Fourth Amendment claim for unreasonable seizure and excessive force, and **(b)** a Second Amendment/Fourteenth Amendment claim for violation of due process on a state-created danger theory.

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. FED. R. CIV. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. *See Brown v. CitiMortgage, Inc.*, 472 F. App'x 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 509–10 (1990)).

With the foregoing legal standard in mind, the Court examines the Fourth Amendment unreasonable seizure/excessive force claim and the Fourteenth Amendment due process claim in light of the Rule 12(c) motion.

### 1. Fourth Amendment Unreasonable Seizure/Excessive Force

Defendant Sharp argues he is entitled to qualified immunity on the Fourth Amendment claim for unreasonable seizure and excessive force for the following reasons: **(a)** Plaintiff fails to allege that Defendant Sharp intentionally shot and killed the Decedent; and **(b)** a Fourth Amendment right to be free from unreasonable seizure by fellow officers during a training exercise was not clearly established at the time of the incident in question.

Plaintiff argues in response that Defendant Sharp is not entitled to qualified immunity on the claim, because Defendant Sharp seized the Decedent. Plaintiff maintains that Defendant Sharp was the "agent in charge" and that "[h]is decisions as the superior officer caused the death of [the Decedent]" in that he "abandoned all protocol for training and made the decision to hold a training session in the parking lot of a strip mall." Pl.'s Resp. Opp'n to Def. Sharp's Mot. J. Pleadings [25] ¶ 1.[29] Plaintiff maintains that her allegations make out a constitutional claim involving intent to harm; she points to the fact that a criminal indictment was recommended against Defendant Sharp for his actions. *Id.* ¶ 3. Plaintiff further argues that her allegations demonstrate that Defendant Sharp acted intentionally by abandoning the protocols of firearms training, "knowing that doing so could cause bodily injury or even death." *Id.* ¶ 4. Plaintiff argues that the actions of Defendant Sharp caused the Decedent to "literally lay in a parking lot and ble[e]d to death." *Id.* ¶ 3. She maintains that such actions have resulted in criminal indictments in other cases and that this demonstrates the requisite intent to support a Fourth

---

[29] However, Plaintiff alleges in her complaint that the firearms training on January 21, 2015 was conducted at the " 'office' of the M[ississippi] G[aming] C[omission]," which "is located inside an office building . . . [in] Robinsonville, M[ississippi,] along with other businesses and civilians." Pl.'s Compl. [1] ¶ 17.

Amendment unreasonable seizure and excessive force claim. *See id.* ¶¶ 5–6. Finally, Plaintiff urges the Court to deny the motion and allow discovery to commence.

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.' " *Lane v. Franks,* —— U.S. ——, ——, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). " 'When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.' " *Beaulieu v. Lavigne,* 539 F. App'x 421, 424 (5th Cir. 2013) (per curiam) (quoting *Club Retro, LLC v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia, Miss.,* 305 F.3d 314, 323 (5th Cir. 2002) (en banc))). " '[A] plaintiff seeking to defeat qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." ' " *Da Vinci Inv., Ltd. P'ship v. Parker,* 622 F. App'x 367, 374 (5th Cir. 2015) (per curiam) (quoting *Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *al-Kidd,* 563 U.S. at 735, 131 S. Ct. 2074)). "Dismissal is warranted 'only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *DeLeon v. City of Dallas, Tex.,* 141 F. App'x 258, 261 (5th Cir. 2005) (per curiam) (quoting *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir. 1996)).

First, the Court examines whether Plaintiff has adequately alleged that Defendant Sharp violated the Decedent's Fourth Amendment right to be free from unreasonable seizures and excessive force. "In order to state a claim for the constitutional violation of excessive force, [Plaintiff] must establish that an injury occurred that resulted directly from the use of clearly excessive force, and that the excessiveness was unreasonable." *See Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009). "[A]ll claims that law enforcement officers

have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). An officer's use of deadly force, as in a fatal shooting, is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Hatcher v. Bement*, 676 F. App'x 238, 242 (5th Cir. 2017) (per curiam) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)); *Jones v. Lopez*, No. 16-20290, 2017 WL 2126353, at *1 (5th Cir. May 15, 2017) (per curiam). Qualified immunity is designed to shield government officials from conduct that may have been a "reasonable mistake[]" or negligence. *Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

In *Carty v. Rodriguez*, 470 F. App'x 234 (5th Cir. 2012) (per curiam), a case cited by Defendant Sharp, a state trooper candidate suffered severe brain trauma during a law enforcement training exercise and died. *Id.* at 239–40. In that case, the Fifth Circuit reversed the district court's denial of the defendant's motion to dismiss on the basis of qualified immunity, finding that the official was entitled to qualified immunity. *Carty* involved a state trooper candidate participating in mandatory hand-to-hand, toe-to-toe training with fellow state trooper candidates while clad in protective headgear and boxing gloves. In *Carty*, the decedent allegedly died from injuries sustained from other trainees and due to the training coordinator's limiting of the staff's attempts to check on the injuries. *Id.* at 236. The Fifth Circuit held that those facts did not make out a cognizable Due Process Clause violation claim. *Id.* at 239–40.

In contrast, in the case *sub judice*, it is undisputed that Defendant Sharp shot the Decedent in his chest, that the Decedent died from the gunshot wound, and that the Decedent's death resulted directly from the shooting. On Plaintiff's alleged facts in this case, Defendant Sharp, a Mississippi Gaming Commission special agent alleged to be in charge of firearms training, removed his real firearm from his holster and shot and killed the Decedent. Defendant Sharp did not merely negligently contribute to the cause of death; he directly caused the Decedent's death. Furthermore, Defendant Sharp made a fatal mistake that could have been prevented with even a modicum of precaution. Although Defendant Sharp disputes that the Decedent's death resulted from Defendant Sharp's use of excessive force and that the force was objectively unreasonable, the Court finds that Plaintiff has adequately alleged that Defendant Sharp seized the Decedent, that the Decedent's death resulted from excessive force, and that the force was objectively unreasonable. In this Court's opinion, the allegations evince unreasonable behavior exceeding gross negligence, particularly given the state's pursuit of criminal charges against Defendant Sharp. For all of the foregoing reasons, the Court finds that Plaintiff has adequately alleged that Defendant Sharp committed a Fourth Amendment violation.

Second, the Court examines whether Plaintiff has demonstrated that the alleged constitutional violation was clearly established at the time of the events giving rise to this suit. The relevant question for qualified immunity purposes at this Rule 12(c) stage is this: Could Defendant Sharp reasonably have believed, at the time he shot the Decedent, that his specific actions constituted behavior that was in violation of federal law?

"Clearly established law must be particularized to the facts of the case," *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (quoting *White v. Pauly*, —— U.S. ——, ——, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (Jan. 9, 2017) (internal quotation marks and citation omitted)), and

"should not be defined at a high level of generality," *id.* (quoting *White*, 137 S. Ct. at 552) (internal quotation marks and citation omitted). "In other words, outside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* (quoting *White*, 137 S. Ct. at 552) (internal quotation marks and citation omitted). Although "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right[, t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (internal quotation marks and citations omitted). "A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the . . . constitutional question beyond debate.' " *Hanks*, 853 F.3d at 746–47 (quoting *White*, 137 S. Ct. at 551).

Although no Fifth Circuit case is directly on point, case law from other jurisdictions is instructive.

For instance, in cases involving one law enforcement officer shooting another officer while mistaking him for a suspect ("friendly fire" cases), courts have held the shooting officer was not entitled to qualified immunity. *See Wilkins v. City of Oakland, Calif.*, 350 F.3d 949, 952–55 (9th Cir. 2003), *cert. denied, sub nom. Scarrot v. Wilkins*, 543 U.S. 811, 125 S. Ct. 43, 160 L. Ed. 2d 14 (2004) (upholding denial of summary judgment for officers who shot and killed fellow officer); *Jensen v. City of Oxnard, Calif.*, 145 F.3d 1078, 1086–1087 (9th Cir. 1998), *cert. denied*, 525 U.S. 1016, 119 S. Ct. 540, 142 L. Ed. 2d 449 (1998) (officer who shot fellow officer "in conditions in which he should have been able to recognize that the figure he was shooting

was a fellow officer" was not entitled to qualified immunity); *Duy Ngo v. Storlie*, No. 03-3376 (RHK/JJG), 2006 WL 1579873, at *7 (D. Minn. June 2, 2006), *aff'd sub nom. Ngo v. Storlie*, 495 F.3d 597 (8th Cir. 2007) ("[T]he court cannot say, as a matter of law, that the shooting officer made a reasonable mistake in shooting a fellow officer; courts allow a jury to decide whether the shooting officer's actions were objectively reasonable."); *Young v. City of Providence, R.I.*, 404 F.3d 4, 22–23 (1st Cir. 2005) (reversing summary judgment in favor of officer who shot fellow officer by finding that a reasonable officer would not have made such a misidentification); *Curley v. Klem*, 298 F.3d 271, 279–80 (3d Cir. 2002) (officer who mistakenly shot another officer without taking time to assess the circumstances was not entitled to qualified immunity). Although these "friendly fire" cases are not factually identical to the case *sub judice*, the Court finds them to be instructive on the intersection of a Fourth Amendment claim and qualified immunity.

Furthermore, this Court finds instructive the Ninth Circuit "mistaken weapon" case *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011), involving a police officer's fatal shooting of a suspect with the police officer's Glock, a semiautomatic pistol, mistakenly believing it at the time to be her Taser. *Id.* at 1121. In *Torres*, the Ninth Circuit held that the law was clearly established that such action was in violation of the Fourth Amendment, reasoning: "While locating the outer contours of the Fourth Amendment may at times be a murky business, few things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, nondangerous suspect by shooting him dead' in the absence of 'probable cause to believe that the [fleeing] suspect poses a threat of serious physical harm, either to the officer or to others.' " *Id.* at 1128 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)).

Additionally, this Court finds instructive the reasoning in two additional opinions from other circuits on Fourth Amendment excessive force in the law enforcement/suspect context. In *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), the Tenth Circuit stated: "We do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself. . . . A reasonable officer would know these actions present a substantial and totally unnecessary risk of death to the person." *Id.* at 1154. Similarly, in *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009), the Eleventh Circuit held that an officer who had repeatedly utilized his Taser on an individual who was unarmed, committed no serious offense, and posed no threat was not entitled to qualified immunity; the law was clearly established that "no reasonable officer could have thought that this amount of force was legal under the circumstances," even though there was no case directly on point. *Id.* at 907–08.

With respect to the case *sub judice*, this Court finds that a firearms instructor/special agent of the Mississippi Gaming Commission reasonably should have known that if he shot and killed a fellow firearms instructor/special agent while mistaking his firearm for a dummy firearm that his actions could violate the Fourth Amendment. *See Davies v. City of Lakewood*, No. 14-CV-01285-RBJ, 2016 WL 615471, at *7 (D. Colo. Feb. 16, 2016), *appeal dismissed sub nom. Davies v. Braley* (Feb. 18, 2016) ("Under plaintiff's version of the facts a reasonable officer would have recognized the man on the fence as a fellow officer. It is obvious that a reasonable officer would have known that shooting and killing a fellow officer who posed absolutely no threat to the officer or others would violate the Constitution."). This case is unlike the prototypical Fourth Amendment unreasonable seizure/excessive force case involving a law enforcement officer and suspect. Nor is this case exactly like other friendly-fire cases involving

a law enforcement officer shooting a fellow law enforcement officer while mistaking him for a suspect. However, the United States Supreme Court has stated that officials can still have fair warning that their conduct violates established law "even in novel factual circumstances," as in the case *sub judice*. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

Certainly, the Court cannot say at this juncture that based on the pleadings alone the Plaintiff cannot defeat qualified immunity for Defendant Sharp. "Taking the pleaded facts in the light most favorable to [Plaintiff], [this Court] find[s] that [Plaintiff] may be able to prove [a claim against Defendant Sharp] in violation of the Fourth and Fourteenth Amendments." *See Giardina v. Lawrence*, 354 F. App'x 914, 915 (5th Cir. 2009) (per curiam). Accordingly, Defendant Sharp's motion for judgment on the pleadings is denied as to the Fourth Amendment unreasonable seizure/excessive force claim.

### 2. Fourteenth Amendment Due Process

Finally, Defendant Sharp argues he is entitled to qualified immunity on the due process claim urged pursuant to the Second Amendment and Fourteenth Amendment on a state-created danger theory for the following reasons: **(a)** a government employee's duty to provide its employees with a safe working environment is not part of the Fourteenth Amendment's Due Process Clause; and **(b)** no clearly established law puts a reasonable officer on notice that planning and conducting enforcement training exercises could violate the Due Process Clause. In Plaintiff's response in opposition to Defendant Sharp's motion, Plaintiff offers no argument supporting her due process claim.

To the extent Plaintiff has attempted to allege a constitutional due process claim against Defendant Sharp, the Court finds that the same is not a viable constitutional claim. Although

substantive due process generally does not impose a duty on state actors to protect citizens from harm, *Dixon v. Alcorn Cty. Sch. Dist.*, 499 F. App'x 364, 366 (5th Cir. 2012) (per curiam) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)), some courts have allowed two possible exceptions to that general rule based on *DeShaney*: (1) when the state has a "special relationship" with the citizen, such as when the state takes the person into custody or otherwise limits the person's freedom to act on his or her own behalf; and (2) when the state has created the danger that led to the person's injury, *see DeShaney*, 489 U.S. at 198–201, 109 S. Ct. 998.

*DeShaney* carved out the state-created danger theory, which provides that "state actors may be held liable when 'the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury.' " *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013) (quoting *McClendon*, 305 F.3d at 324). The Fifth Circuit "[has] never explicitly adopted the state-created danger theory"; therefore, a claim relying on state-created danger is not a cognizable constitutional claim. *Paraza v. Sessions*, No. 15-60727, 2017 WL 1013070, at *1 (5th Cir. Mar. 14, 2017) (per curiam) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012) (en banc)); *see Whitley*, 726 F.3d at 637 (Fifth Circuit has "declined to adopt a state-created danger theory to trigger affirmative duties under the Due Process Clause").[30] Because in the case *sub judice* Plaintiff has failed to state a cognizable

---

[30] However, the Fifth Circuit has "identified elements that a plaintiff would need to allege if [the Fifth Circuit] ever recognized the state-created danger theory": (1) allegations "that the defendant used his or her authority to create a dangerous environment" and (2) allegations "that the defendant acted with deliberate indifference to the plight of the plaintiff." *Chavis v. Borden*, 621 F. App'x 283, 286 (5th Cir. 2015) (per curiam) (citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (en banc) (internal quotation marks and citation omitted)). "To establish deliberate indifference for purposes of state-created danger, the plaintiff must show that '[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and . . . they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.' " *Covington Cty.*, 675 F.3d at 865 (quoting *Piotrowski v. City of Houston, Tex.*, 237 F.3d 567, 585 (5th Cir. 2001) (citation and internal quotation marks omitted)).

constitutional claim with her state-created danger allegations, her claim fails. Because there is no underlying constitutional violation, no further qualified immunity analysis is necessary as to the due process claim. *See Myers v. Klevenhagen*, 97 F.3d 91, 96 (5th Cir. 1996) (unnecessary for courts to reach qualified immunity issue if no alleged constitutional violation). Furthermore, "a substantive due process claim is unavailable if, [as here,] an excessive-force claim is covered by the Fourth Amendment." *See Pena v. Givens*, 637 F. App'x 775, 782 n.3 (5th Cir. 2015) (per curiam) (citing *City of Sacramento, Calif. v. Lewis*, 523 U.S. 833, 843, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (internal quotation marks omitted)). Therefore, the motion for judgment on the pleadings is granted as to the due process claim, and that claim must be dismissed.

### III.    *Conclusion*

In sum, the motion to dismiss [8] filed by Defendants State of Mississippi, Mississippi Gaming Commission, Mississippi Department of Public Safety, and Robert Sharp in his official capacity is GRANTED. All official-capacity claims are DISMISSED; and Defendants State of Mississippi, Mississippi Gaming Commission, Mississippi Department of Public Safety, and Robert Sharp in his official capacity are DISMISSED AS PARTIES.

Furthermore, the motion for judgment on the pleadings [17] filed by Defendant Robert Sharp in his individual capacity is GRANTED IN PART AND DENIED IN PART, specifically, GRANTED insofar as the constitutional due process claim against Defendant Sharp in his individual capacity is DISMISSED due to qualified immunity, but DENIED insofar as Defendant Sharp is not entitled to qualified immunity at this juncture on the Fourth Amendment unreasonable seizure/excessive force claim.

The claims remaining in the case *sub judice* are as follows: **(1)** the Fourth Amendment unreasonable seizure/excessive force claim against Defendant Sharp in his individual capacity and **(2)** the constitutional reckless indifference claim against Defendant Tunica County.

An order in accordance with this opinion shall issue this day.

THIS, the 11th day of July, 2017.

_____
SENIOR U.S. DISTRICT JUDGE